UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

TERRANCE STEWART #173781,

    Plaintiff,

v

JUDY GRACIK, *et al.*,

    Defendants.

NO. 1:10-cv-698

HON. ROBERT J. JONKER

MAG. HUGH W. BRENNEMAN, JR.

---

Terrance Stewart #173781
*In Pro Per*
Lakeland Correctional Facility
141 First Street
Coldwater, MI 49036

CHAPMAN AND ASSOCIATES, PC
Ronald W. Chapman (P37603)
Kimberley A. Koester (P48967)
Attorneys for Defendants PHS,
  Dr. Abdellatif and PA Spitters
40950 Woodward Avenue, Suite 120
Bloomfield Hills, MI 48304
(248) 644-6326

Joshua D. Marcum (P68244)
Attorney for MDOC Defendants
Michigan Department of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-7021

The Juip Richtarcik Law Firm
Randall A. Juip (P58538)
Brian J. Richtarcik (P49390)
Matthew H. Wesorick (P67008)
Attorneys for Defendants CMS, PA Spitters,
  Drs. Abdellatif and Hutchinson
The Penobscot Building
645 Griswold, Suite 3850
Detroit, MI 48226
(313) 859-5900

---

## BRIEF IN SUPPORT OF DEFENDANTS GRACIK, BERGHUIS AND CARUSO'S MOTION FOR SUMMARY JUDGMENT

    Bill Schuette
    Attorney General

    Joshua D. Marcum (P68244)
    Assistant Attorney General
    Attorneys for MDOC Defendants
    Corrections Division
    P.O. Box 30217
    Lansing, MI 48909
    Phone: (517) 335-7021
    Email: marcumj@michigan.gov

Date: January 26, 2011
    [P68244]

## CONCISE STATEMENT OF ISSUES PRESENTED

I.  To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States.  A plaintiff must also make a clear showing that each named Defendant was personally involved in the activity that forms the basis of the complaint.  Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act."  Plaintiff has not sufficiently alleged personal involvement of Defendants Caruso, Berghuis and Gracik to impose liability against them under 42 U.S.C. § 1983.  Should Plaintiff's claims against these Defendants be dismissed?

   Defendants' answer: Yes.
   Plaintiff's answer:    Unknown.

II.  A claim under the Eighth Amendment for deliberate indifference requires a showing by Plaintiff that there exists an objectively serious medical need and that the Defendant had the requisite knowledge of the risk of harm to Plaintiff's health and disregarded that risk.  Plaintiff claims that his Eighth Amendment rights were violated when Defendants failed to provide him medical care including wheelchair foot-rests and AFO leg braces.  Where it is clear that Plaintiff had numerous medical appointments to discuss his concerns and, in fact, refused to have footrests installed on multiple occasions, has Plaintiff established a violation of the Eighth Amendment.

   Defendants' answer:      No.
   Plaintiff's answer:      Unknown.

III. Defendants are state employees who acted in their official capacities at all times.  Defendants acted reasonably and did not violate the plaintiff's clearly established constitutional rights.  Are Defendants entitled to Eleventh Amendment and Qualified immunities?

   Defendants' answer:      Yes.
   Plaintiff's answer:      Unknown.

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

    A.    <u>Lack of Personal Involvement</u>.

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.[1] A plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint.[2] Defendants are cognizant of the well-settled maxim that *pro se* complaints are held to a "less stringent standard" than those drafted by attorneys.[3] But even under the less stringent standard allowed for *pro se* complaints, the complaint must allege facts sufficient to show that a legal wrong has been committed and that it was committed by the named defendants. Conclusory, unsupported allegations of constitutional deprivation do not state a claim.[4]

    B.    <u>Eighth Amendment Deliberate Indifference</u>.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment cannot be "barbarous" or in contravention of society's "evolving standards of decency."[5] The clause prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."[6] A plaintiff raising an Eighth Amendment claim regarding medical care or treatment must establish something more than mere negligence or a lack of ordinary due care.[7] It is the "deliberate indifference to serious medical needs of prisoners" which constitutes the "unnecessary and wanton infliction of pain proscribed

---

[1] *Baker v. McCollan,* 443 U.S. 137 (1989).
[2] *Rizzo v. Goode*, 423 U.S. 362 (1976); *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir.), *cert. denied,* 469 U.S. 845 (1984).
[3] *Haines v. Kerner*, 404 U.S. 519 (1972).
[4] *See Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).
[5] *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *Troup v. Dulles,* 356 U.S. 86, 101 (1958).
[6] *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes,* 452 U.S. at 346).
[7] *Whitley v. Albers,* 475 U.S. 312, 319 (1986); *Roland v. Johnson,* 856 F.2d 764, 769 (6th Cir. 1988).

by the Eighth Amendment."[8]  A plaintiff must allege that the defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety."[9]

        C.      <u>Eleventh Amendment and Qualified Immunity</u>.

The Eleventh Amendment provides jurisdictional immunity to state officials when the state is the real, substantial party in interest.[10]  As when the state itself is named as the defendant, a suit against state officials that is, in fact, a suit against a state is barred regardless of whether it seeks damages or injunctive relief.[11]  Claims against the Michigan Department of Corrections are barred by the Eleventh Amendment.[12]

The qualified immunity inquiry must focus on the "objective reasonableness" of the official's conduct.[13]  Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."[14]  The burden of proof is on plaintiffs to show that defendants are *not* entitled to qualified immunity.[15]

---

[8] *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (citing *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)).
[9] *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).
[10] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).
[11] *Pennhurst*, 465 U.S. at 101-02.
[12] *Abick v. Michigan*, 803 F.2d 874, 876-77 (6th Cir. 1986).
[13] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[14] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
[15] *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

**STATEMENT OF FACTS**

Plaintiff, Terrance Stewart ("Stewart"), is a *pro se* prisoner who is currently confined in the Michigan Department of Corrections ("MDOC") at the Lakeland Correctional Facility (LCF), Coldwater, Michigan. Stewart's Complaint is filed under 42 U.S.C. § 1983 and protests infringement of his civil rights, alleging violations of the Eighth Amendment of the United States Constitution.

At the times giving rise to the allegations in his Complaint, Stewart was incarcerated at the Ernest C. Brooks Correctional Facility (LRF), Muskegon, Michigan. MDOC Defendants who have been served at the time of this filing are MDOC Director Patricia Caruso, Warden of LRF Mary Berghuis and Heath Unit Manager of LRF Judy Gracik.

In general, Stewart's Complaint alleges deliberate indifference toward his physical health, particularly concerning a condition known as "foot drop." Stewart is a paraplegic as a result of a gunshot wound over 20 years ago.[16] He claims that his medical care before his incarceration included wheelchair foot rests as well as walking with the assistance of AFO leg braces and "Canadian crutches." According to Stewart, such pre-incarceration medical care prevented him from suffering the foot drop.[17]

Stewart claims that foot drop is preventable with the medical care and therapy he requested. He further claims that he requested foot rests, leg braces and Canadian crutches from each Defendant named in the suit.[18] Stewart does not specifically describe any act or omission on the part of any MDOC Defendant.

As to Defendant Judy Gracik, Stewart claims that she was the Health Unit Manager at LRF who was directly responsible for the approval or disapproval of all medical care and

---

[16] D/E #1, Complaint, at p. 4.
[17] D/E #1, Complaint, at p. 4.
[18] D/E #1, Complaint, at p. 5.

1

procedures at LRF.[19] He claims that Defendant Mary Berghuis, the Warden of LRF, was directly responsible for the custody, care and safety of all the prisoners at LRF.[20] As to Director Patricia Caruso, Stewart claims that she was directly responsible for all policies and procedures throughout MDOC.[21] Aside from the general, conclusory allegations made against all Defendants, there are no specific allegations against any of the MDOC Defendants.

In terms of relief, Stewart seeks compensatory damages of $150,000 per defendant, punitive damages of $150,000 per defendant, as well as injunctive relief and medical care.

---

[19] D/E #1, Complaint, at p. 2.
[20] D/E #1, Complaint, at p. 2.
[21] D/E #1, Complaint, at p. 2.

# ARGUMENT

I.  **To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States.  A plaintiff must also make a clear showing that each named Defendant was personally involved in the activity that forms the basis of the complaint.  Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act."  Plaintiff has not sufficiently alleged personal involvement of Defendants Caruso, Berghuis and Gracik to impose liability against them under 42 U.S.C. § 1983.**

Stewart seeks to impose liability against MDOC Director Caruso because of her title of "Director," and against Warden Berghuis simply because she is the Warden of LRF.  Though HUM Gracik has administrative responsibilities over the health care unit, Stewart fails to make any specific allegation against her.  Stewart's complaint fails to allege the requisite personal involvement of Director Caruso, Warden Berghuis or HUM Gracik.

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.[22]  A plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint.[23]  Defendants are cognizant of the well-settled maxim that *pro se* complaints are held to a "less stringent standard" than those drafted by attorneys.[24]  But even under the less stringent standard allowed for *pro se* complaints, the complaint must allege facts sufficient to show that a legal wrong has been committed and that it was committed by the named defendants.  Conclusory, unsupported allegations of constitutional deprivation do not state a claim.[25]

Defendant Caruso is the Director of MDOC.  Plaintiff's allegations against Director Caruso are simply that she was directly responsible for all policies and procedures throughout

---

[22] *West v. Atkins,* 487 U.S. 42, 48 (1988).
[23] *Rizzo v. Goode,* 423 U.S. 362 (1976); *Copeland v. Machulis,* 57 F.3d 476, 481 (6th Cir. 1995).
[24] *Haines v. Kerner,* 404 U.S. 519 (1972).
[25] *Ana Leon T. v. Federal Reserve Bank,* 823 F.2d 928, 930 (6th Cir.), *cert. denied*, 484 U.S. 945 (1987); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)

MDOC.[26]  Mary Berghuis is the Warden of LRF.  His only allegation against Warden Berghuis is that she was directly responsible for the custody, care and safety of all the prisoners at LCF.[27] Without specifically enumerating any act or omission of any named Defendant, he claims that he requested medical care (foot rests and leg braces) from all defendants.  He also claims that all defendants knew of, or should have known of, his medical needs and risks and they refused or failed to provide the needed medical attention.

A claimed constitutional violation must be based upon active unconstitutional behavior.[28] The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.[29]  In *Bellamy v. Bradley,*[30] the Sixth Circuit stated that in order to impose liability on supervisory personnel, a plaintiff must show more than having brought offending conduct to the attention of supervisory officials:

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved and knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

Bringing a complaint to the attention of supervisory officials is insufficient.  A supervisory official's awareness after the fact of alleged illegal conduct does not provide a basis for imposition of damages under 42 U.S.C. § 1983.[31]  Merely being aware of a prisoner's complaint and failing to take corrective action is insufficient to impose liability on supervisory personnel under § 1983.[32]  Liability under § 1983 must be based on active unconstitutional behavior and

---

[26] Complaint, at p. 2.
[27] Complaint, at p. 2.
[28] *Greene v. Barber,* 310 F.3d 889, 899 (6th Cir. 2002).
[29] *Greene,* 310 F.3d at 899; *Summers v. Leis,* 368 F.3d 881, 888 (6th Cir. 2004).
[30] *Bellamy,* 729 F.2d at 421 (citing *Hays v. Jefferson County,* 668 F.2d 869, 872-74 (6th Cir. 1982)).
[31] *Weaver v. Toombs,* 756 F. Supp. 335, 337 (W.D. Mich. 1989).
[32] *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir. 1988), *cert denied,* 488 U.S. 1007 (1989).

4

cannot be based upon "a mere failure to act."[33] "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[34]

In this case, Stewart has made allegations against various prison and medical staff that, for purposes of this issue only will be assumed to show a constitutional violation. As to Director Caruso and Warden Berghuis, however, Stewart has alleged only that they were indifferent to the alleged actions or inactions of subordinates. Stewart has not made any factual allegations showing Director Caruso and Warden Berghuis' direct and personal involvement in the complained-of acts. Moreover, beyond a naked allegation in his complaint, Stewart has not shown that Director Caruso or Warden Berghuis had "actual knowledge of a breakdown in the proper working of the department" and failed to perform (their) own specific duties in the face of such actual knowledge.[35]

Because Stewart has failed to show personal involvement sufficient to impose liability under § 1983, Defendants Caruso and Berghuis are entitled to dismissal.

As to Defendant Judy Gracik, Stewart claims that she was the Health Unit Manager (HUM) at LRF who was directly responsible for the approval or disapproval of all medical care and procedures at LRF.[36] As stated, without specifically enumerating any act or omission of any named Defendant, Stewart claims that he requested medical care (foot rests and leg braces) from all defendants, including Gracik. He also claims that all defendants (presumably including Gracik) knew of, or should have known of, his medical needs and risks and they refused or failed to provide the needed medical attention.

---

[33] *Shehee v. Lutrell,* 199 F.3d 295, 300 (6th Cir. 1999) (citing *Salehpour v. University of Tenn.,* 159 F.3d 199, 206 (6th Cir. 1998), *cert denied,* 119 S. Ct. 1763 (1999).
[34] *Ashcroft v. Iqbal,* 556 U.S. ___; 129 S. Ct. 1937, 1948 (2009).
[35] *Hill v. Marshall,* 962 F.2d 1209, 1213 (6th Cir. 1992).
[36] D/E #1, Complaint, at p. 2.

As opposed to Defendants Caruso and Berghuis, who have broad and general supervisory duties, Defendant Gracik is responsible for the efficient and effective management of health services within the Health Care Unit.[37] Her duties include the coordination of all clinical activities, dental, medical, psychological services, mental health and all ancillary and support services.[38]

Though Defendant Gracik's duties are more specifically oriented toward health care management than Defendants Caruso or Berghuis, that fact does not absolve Stewart of his requirement to make specific allegations against her. As stated, a plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint.[39] Conclusory, unsupported allegations of constitutional deprivation do not state a claim.[40] Nowhere in Plaintiff's Complaint does he make a specific allegation against, or describe any specific act or omission of, Defendant Gracik.

The court must determine whether an allegation contains enough facts to state a claim to relief that is plausible on its face.[41] A claim is considered to be facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[42] Although the plausibility standard does not amount to a "probability" requirement, it requires more than a simple possibility that a defendant has acted unlawfully.[43]

---

[37] Def. Ex. A, Affidavit of Judy Gracik.
[38] Def. Ex. A.
[39] *Rizzo v. Goode,* 423 U.S. 362 (1976); *Copeland v. Machulis,* 57 F.3d 476, 481 (6th Cir. 1995).
[40] *Ana Leon T.,* 823 F.2d at 930; *Chapman,* 808 F.2d at 465.
[41] *Bell Atl. Corp v. Twombley*, 550 U.S. 544, 555 (2007).
[42] *Ashcroft*, 129 S. Ct. at 1949.
[43] *Ashcroft*, 129 S. Ct. at 1949

6

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.[44] At a minimum, in order to state a claim a plaintiff must make sufficient allegations to give a defendant fair notice of a claim.[45] Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.[46]

Beyond broad and conclusory statements, Stewart fails to allege any specific conduct by Defendant Gracik. As such, his allegations fall far short of the minimal pleading standards that require a short and plain statement of the claim showing that the particular pleader is entitled to relief.[47] Because Stewart has failed to show personal involvement sufficient to impose liability under § 1983, Defendant Gracik is also entitled to dismissal.

Further, despite Defendant Gracik's role as HUM, she did not provide the treatment and items requested by Defendant Stewart because they were not ordered by a physician pursuant to a Special Accommodation Notice. A Special Accommodation Notice (SAN) provides a prisoner with various assistive devices and other services necessary for medical needs, subject to restrictions necessary to maintain institutional order and security.[48] Only a Medical Practitioner (MP) or Qualified Health Professional (QHP) is authorized to issue a permanent SAN.[49]

No medical provider issued a SAN for the items requested while Stewart was incarcerated at LRF.[50] In all, Stewart had a SAN issued by medical staff on eight (8) occasions

---

[44] *Twombley*, 550 U.S. at 544.
[45] *Twombley*, 550 U.S. at 544.
[46] *Frazier v. Michigan*, 41 Fed. Appx. 762, 764; 2002 U.S. App. LEXIS 14881 (6th Cir. July 27, 2002)(unpublished decision)(copy attached)(Def. Ex. B).
[47] Fed. R. Civ. P. 8.
[48] Def. Ex. A.
[49] Def. Ex. A.
[50] Def. Ex. A.

7

while incarcerated at LRF.[51] No SAN issued during that time included foot rests or leg braces. In addition, the first SAN issued after Stewart's transfer to from LRF to Lakeland Correctional Facility (LCF) also did not include foot rests or leg braces.[52] Without a SAN ordering the items Stewart's Complaint request, Defendant Gracik cannot be responsible for allegedly failing to provide such items. The items were not authorized and could not be provided.

Stewart has failed to show personal involvement of Defendants Caruso, Berghuis and Gracik sufficient to impose liability under § 1983. Those Defendants request that this Court dismiss them from Plaintiff's Complaint.

**II.     A claim under the Eighth Amendment for deliberate indifference requires a showing by Plaintiff that there exists an objectively serious medical need and that the Defendant had the requisite knowledge of the risk of harm to Plaintiff's health and disregarded that risk. Plaintiff claims that his Eighth Amendment rights were violated when Defendants failed to provide him medical care including wheelchair foot-rests and AFO leg braces. Plaintiff cannot show deliberate indifference in this matter, as Plaintiff had numerous medical appointments to discuss his concerns and, in fact, refused to have footrests installed on multiple occasions.**

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment cannot be "barbarous" or in contravention of "evolving standards of decency."[53] The clause prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."[54] A plaintiff raising an Eighth Amendment claim regarding medical care or treatment must establish something more than mere negligence or a lack of ordinary due care.[55] It is the "deliberate indifference to serious medical needs of

---

[51] Def. Ex. A.
[52] Def. Ex. A, Referring to Excerpts of Plaintiff's Medical Records Attached Thereto, FILED UNDER SEAL.
[53] *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *Troup v. Dulles,* 356 U.S. 86, 101 (1958).
[54] *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes,* 452 U.S. at 346).
[55] *Whitley v. Albers,* 475 U.S. 312, 319 (1986); *Roland v. Johnson,* 856 F.2d 764, 769 (6th Cir. 1988).

prisoners" which constitutes the "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."[56]

Thus, a plaintiff must allege that the defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety."[57] The subjective component, "deliberate indifference," requires that a plaintiff show that defendant possessed "a sufficiently culpable state of mind."[58] If a medical condition poses a serious medical need for care or treatment, the question is whether the denial of such care or treatment was likely to result in unnecessary suffering or worsening of the condition.[59]

The denial of medical treatment satisfies the deliberate indifference standard only if significant harm or injury is shown.[60] To satisfy the objective component, the injury must be "sufficiently serious."[61] A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.[62] A condition is objectively serious if failure to treat it could result in further significant injury or unnecessary and wanton infliction of pain.[63]

Stewart claims that he suffered a significant injury as a result of not receiving proper medical attention. Namely, he claims that his feet have "dropped to a fixed position of approximately 15 degrees to 20 degrees…"[64] He claims that the foot drop has had a significant

---

[56] *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (citing *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)).
[57] *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).
[58] *Farmer*, 511 U.S. at 834.
[59] *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-89 (11th Cir. 1994).
[60] *Jackson v. Illinois Medi-Care, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002).
[61] *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).
[62] *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).
[63] *Gutierrez*, 111 F.3d at 1373.
[64] D/E #1, Complaint, at p. 5.

9

psychological effect, stating that he has "spent the past 4 years emotionally and psychologically debilitated, withdrawn and depressed…"[65]

With regard to the foot drop condition itself, Stewart was evaluated by medical staff at LCF on May 27, 2010, months after he was transferred from LRF. At the time of that evaluation, Stewart "had feeling down to the knees and there was a <u>slight</u> foot drop bilat greater on right…"[66] Even at the time of that evaluation, Stewart reported to medical staff that he was able to stand and walk with the assistance of Canadian Crutches. At that time, he was also found to be able to stand next to the examination table and walk slowly using the table to steady himself.[67] He reported that he had been in a wheelchair for over 20 years at that point.

As to the his claim that he has been "withdrawn and depressed for the last 4 years," his medical records again tell a different story. As recently as April 1, 2009, MDOC offered to have arm rests and foot rests placed on his wheelchair.[68] In discussing the installation of arm and foot rests, Stewart informed medical staff that he plays basketball with inmates who are not in wheelchairs, and plays so vigorously that he sometimes falls out of the wheelchair.[69] He claimed at that time that he worked out routinely by playing basketball.

Stewart has not satisfied the objective component of deliberate indifference, which requires that the claimed injury be "sufficiently serious."[70]

With regard to the subjective component, the Plaintiff must show that a Defendant possessed a sufficiently culpable state of mind in allegedly depriving appropriate and sufficient

---

[65] D/E #1, Complaint, at p. 5.
[66] Def. Ex. C, Excerpts of Plaintiff's Medical Records, FILED UNDER SEAL (Redacted to include only 5/27/2010 visit)[Emphasis Added].
[67] Def. Ex. C.
[68] Def. Ex. A.
[69] Def. Ex. A.
[70] *Seiter*, 501 U.S. at 297.

medical care. The subjective component requires a showing that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety.[71]

Defendant Gracik did not act with deliberate indifference toward Stewart's condition and medical care. Defendant Gracik is the HUM at LRF. She is a manager and is not a day-to-day direct medical care provider. As already stated, the treatment and items requested by Defendant Stewart were not ordered pursuant to a Special Accommodation Notice during the time Stewart was incarcerated at LRF. A Special Accommodation Notice (SAN) provides a prisoner with various assistive devices and other services necessary for medical needs, subject to restrictions necessary to maintain institutional order and security.[72]

No medical provider issued a SAN for the items requested while Stewart was incarcerated at LRF.[73] In all, Stewart had a SAN issued by medical staff on eight (8) occasions while incarcerated at LRF.[74] The items and treatment requested by Stewart were simply never ordered by medical staff. Without a SAN issued by treating physicians, Defendant Gracik cannot be considered responsible for allegedly failing to provide the requested treatment items. Despite numerous evaluations by, and visits with, the medical provider, the items were simply never ordered.

Stewart's medical history also indicates that MDOC personnel were not deliberately indifferent to Stewart's medical condition. Stewart's medical records for September of 2006 through November of 2010 consist of 338 pages and more than 200 separate entities. Taking only the small sample of documents attached to the affidavit of Judy Gracik, Stewart was seen by more than 20 different medical personnel. The Gracik Affidavit outlines more than 25 different

---

[71] *Seiter*, 501 U.S. at 302-03.
[72] Def. Ex. A.
[73] Def. Ex. A.
[74] Def. Ex. A.

11

entries where Stewart was either scheduled for a disability appointment, his wheelchair was repaired or concerns pertinent to this case were discussed.[75]

More importantly, Stewart's medical history includes numerous instances where Stewart refused to allow MDOC to provide him with the foot rests he himself demanded. In particular, on several occasions he either refused to have his wheelchair sent offsite to have foot rests installed, or refused foot rests outright.[76]

Even before his transfer to LRF, Stewart's wheelchair was sent out by MDOC for installation of foot rests.[77] On April 23, 2007, representatives of Macomb Correctional Facility (MRF) received notification from a wheelchair repair specialist that Stewart's wheelchair could not be repaired.[78] The specialist offered to replace Stewart's wheelchair with a new one.[79] When informed of this, Stewart became angry and threatened a lawsuit. Stewart was also offered the new wheelchair he was provided as a loaner, but he refused that as well.[80]

That is not the only instance of Stewart refusing either a new chair with foot rests or to have footrests installed on his own chair.[81] He outright declined to have foot rests added during medical visits on April 1, April 3 and May 8 of 2009.[82] He was offered new wheelchairs that already had footrests on multiple occasions.[83] He always refused. His chair was sent out on multiple occasions for repairs.[84] He complained that the repair company kept his chair too

---

[75] Def. Ex. A.
[76] Def. Ex. A.
[77] Def. Ex. A.
[78] Def. Ex. A.
[79] Def. Ex. A.
[80] Def. Ex. A.
[81] Def. Ex. A.
[82] Def. Ex. A.
[83] Def. Ex. A.
[84] Def. Ex. A.

long.[85]  He complained that he didn't want to be without his own chair while it was getting the updates.[86]  He complained about having to use a loaner chair; even ones that already had foot rests attached.[87]

At other times he would impose conditions on the repairs that he demanded to his chair. On one occasion, he would only agree to relinquish his wheelchair for three days.[88]  Later, Stewart would only agree to have the foot rests installed on his wheelchair if his wheelchair did not have to be taken off site.[89]  LRF even tried to accommodate Stewart by contacting the company that repairs the wheelchairs to see if it was possible.[90]  LRF was informed that they could not install footrests on the wheelchair without physically having the wheelchair.[91]

Given the multiple attempts to accommodate Stewart's requests, LRF was not deliberately indifferent to his claimed medical needs.  Stewart wanted the foot rest installed on his own chair and on his own terms.  His demands were either unrealistic or altogether impossible.  He refused new chairs with foot rests.  On at least three occasions he refused foot rests outright.  Stewart has not shown deliberate indifference, and Defendants Caruso, Berghuis and Gracik ask for summary judgment in their favor.

### III. Defendants are entitled to Eleventh Amendment and Qualified immunities.

The Eleventh Amendment bars any suit, absent consent, against the state:[92]

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

---

[85] Def. Ex. A.
[86] Def. Ex. A.
[87] Def. Ex. A.
[88] Def. Ex. A.
[89] Def. Ex. A.
[90] Def. Ex. A.
[91] Def. Ex. A.
[92] U.S. CONST. amend. XI.

13

The Supreme Court has held that that amendment's fundamental principles of sovereign immunity negate federal exercise of jurisdiction over suits by citizens against their own states as well.[93] A suit against a state employee in his official capacity is tantamount to a suit against the state itself and must be dismissed on the basis of Eleventh Amendment immunity.[94] Defendants are employees of the State of Michigan who acted in their official capacity. The State of Michigan has not consented to suit, and Defendants Patricia Caruso, Mary Berghuis and Judy Gracik enjoy Eleventh Amendment immunity in their official capacity.

Officials or employees of the Michigan Department of Corrections who are sued in their individual capacities "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[95] The Sixth Circuit applies a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) whether a constitutional violation has occurred; (2) whether the right that was violated was a clearly established right of which a reasonable person would have known; and (3) whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.[96] While the defendants bear the initial burden of presenting facts that, if true, would entitle them to immunity, the ultimate burden of proof falls on the plaintiff to show that the

---

[93] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Mumford v. Basinski*, 105 F.3d 264, 267, n.3 (6th Cir. 1997).
[94] *Brandon v. Holt*, 469 U.S. 464, 471 (1985).
[95] *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996).
[96] *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Higgason v. Stephens*, 288 F.3d 868, 876-77 (6th Cir. 2002); *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

defendants violated a right so clearly established that any official in defendants' positions would have clearly understood that he was under an affirmative duty to refrain from such conduct.[97]

Defendants are entitled to qualified immunity unless a plaintiff's "rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct."[98]  Moreover, if officials "of reasonable competence could disagree on whether the conduct violated the plaintiff's rights," then the defendants are entitled to qualified immunity.[99]

As discussed above, Stewart's constitutional rights were not violated and Defendants acted reasonably at all times.  Defendants are entitled to qualified immunity.

## CONCLUSION AND RELIEF SOUGHT

Based on the foregoing, Defendants Patricia Caruso, Mary Berghuis and Judy Gracik request that this Honorable Court dismiss Plaintiff's Complaint against them.

Respectfully submitted,

Bill Schuette
Attorney General

*s/ Joshua D. Marcum*
JOSHUA D. MARCUM (P68244)
Assistant Attorney General
Attorney for MDOC Defendants
Corrections Division
P.O. Box 30217
Lansing, MI  48909
Phone:  (517) 335-7021
Email:  marcumj@michigan.gov
[P68244]

Date:  January 26, 2011
Marcum\2010 FED\20100032831A Stewart\Brf in Sup of MSJ

---

[97] *Noble*, 87 F.3d at 161.
[98] *Ramirez v. Webb*, 835 F.2d 1153, 1156 (6th Cir. 1987).
[99] *Caldwell v. Woodford County Chief Jailor*, 968 F.2d 595, 599 (6th Cir. 1992).