UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE STEWART,

              Plaintiff,

v.

JUDY GRACIK, *et al.*,

              Defendants.

_____/

Case No. 1:10-cv-698

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1986.  This matter is now before the court on defendants Correctional Medical Services, Inc.,  Badawi Abdellatif, M.D., Daniel Spitters, P.A., and Craig Hutchinson, M.D.'s motion for more definite statement pursuant to Fed. Rules Civ. Proc. 12(e) (docket no. 20), defendant Prison Health Services, Inc.'s motion for more definite statement pursuant to Fed. Rules Civ. Proc. 12(e) (docket no. 21), plaintiff's motion to amend the complaint (docket no. 22), and defendants Mary Berghuis, Judy Gracik and Patricia Caruso's motion for summary judgment (docket no. 27).

### I.      Background

Plaintiff filed a 32-paragraph complaint, in which he sued the following defendants in their personal capacities under §§ 1983 and 1986: Judy Gracik, Health Unit Manager (HUM) at Ernest Brooks Correctional Facility (LRF); LRF Warden Mary Berghuis; Dr. Badawi Abdellatif; PA Spitters; MDOC Director Patricia Caruso; and Dr. Craig Hutchinson.  Compl. at ¶¶ 1-8.  In addition, plaintiff has sued two corporate defendants, Correctional Medical Services, Inc. (CMS)

and Prisoner Health Services, Inc. (PHS).  *Id.* at ¶¶ 8-9.  Plaintiff has sued each corporate defendant "in its official capacity for injunctive relief under 42 USC § 1983, and in its official and personal capacity under 42 USC §§ 1983, 1986 for monetary damages."  *Id.*

Plaintiff has set forth the following allegations in his complaint.[1]  He is a paraplegic due to an injury that occurred over 20 years ago.  *Id.* at ¶ 11.  As a result, plaintiff's "lifetime medical care and therapy includes, but is not limited to, adequate foot rest[s] [on his wheelchair], walking with the assistance of AFO Leg Braces and Canadian Crutches, as prescribed prior to incarceration."  *Id.* at ¶ 12.[2]  Plaintiff alleged that before his incarceration, the foot rests, leg braces and Canadian Crutches had prevented plaintiff "from developing a serious medical condition known as 'Foot Drop.'"  *Id.* at ¶ 13.[3]  According to plaintiff, the "foot drop" condition "occurs when a paraplegic does not get the proper amount of weight and therapy on their ankles often enough and the feet drop and ankle bones deform in a fixed position," but the condition "is preventable with the

---

[1] Plaintiff has apparently attempted to file a verified complaint by attaching a notary jurat to the signature page.  However, plaintiff's complaint includes a variety of opinions, legal arguments and conclusory allegations rather than factual statements.  In this regard, the complaint does not include any dates when the alleged events occurred.  Accordingly, the court does not view this document as a "verified complaint" which can serve to create an issue of fact for purposes of opposing defendants' motion for summary judgment.  *See generally*, *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment).  While statements made in a verified complaint may function as the equivalent of affidavit statements for purposes of summary judgment, such statements must be made on personal knowledge  as would be admissible in evidence, hearsay evidence cannot be considered, and "conclusory allegations made within a verified complaint are insufficient to withstand a motion for summary judgment."  *Hamilton v. Roberts*, No.  97-1696, 1998 WL 639158 at *5 (6th Cir. Sept. 10, 1998) (citing cases).

[2] "AFO" refers to "ankle-foot orthosis."  *See Dorland's Illustrated Medical Dictionary* (28th Ed.) at 34.  Documents in the court record sometimes refer to AFO leg braces as "AFO braces."  The term "Canadian Crutch" refers to a triceps crutch.  *Id.* at 398.

[3] "Foot drop," also known as "drop foot" or "dangle foot," is defined as "dropping of the foot from a peroneal or tibial nerve lesion that causes paralysis of the anterior muscles of the leg."  *See Dorland's* at 648.

2

medical care and therapy of adequate foot rest[s], AFO Leg Braces and Canadian Crutches." *Id.* at ¶ 15.

Plaintiff alleges that he requested medical treatment to prevent foot drop, i.e., adequate foot rests, AFO leg braces and Canadian Crutches, from each named defendant since his incarceration.  *Id.* at ¶ 16.  Because defendants have refused to provide this requested medical treatment, and as a proximate result of defendants' refusal, plaintiff's feet have "dropped to a fixed position of approximately 15 [degrees] to 20 [degrees]."  *Id.* at ¶ 17.  Plaintiff alleged that defendants have been deliberately indifferent to his serious medical needs for four years in violation of his Eighth Amendment  rights.  *Id.* at ¶¶ 18, 22 and 25.  In addition, defendants' "policies, procedures, and, actions" disregarded a substantial risk that plaintiff would develop foot drop "violative of Plaintiff's Fourteenth Amendment Due Process right to Eighth Amendment protections" and have caused him pain, suffering, mental anguish, emotional and psychological distress, and actual physical injuries. *Id.* at ¶ 23.  Plaintiff further alleged that defendants "overtly conversed among themselves" regarding his serious medical needs, "to prevent [him] from reducing a substantial risk of foot drop."  *Id.* at ¶ 26.  Based on these alleged violations, plaintiff seeks over $ 1,000,000.00 in compensatory damages, special damages and punitive damages, as well as injunctive relief against defendant PHS "for the immediate provision of adequate medical care, therapy, AFO Leg Braces, and Canadian Crutches."  *Id.* at p. 8.

## II.   Plaintiff's claims under 42 U.S.C. § 1986

As an initial matter, plaintiff's complaint does not allege a claim under 42 U.S.C. § 1986, a statute which imposes liability on persons who fail to prevent a conspiracy prohibited by 42 U.S.C. § 1985.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321

3

(1996) ("PLRA"), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief."  *Jones v. Bock*, 549 U.S. 199, 215 (2007).  In making this determination, the Court must read the plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept the plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

In order to state a cause of action under § 1986, plaintiff must allege that a conspiracy existed under  28 U.S.C. § 1985, and that the defendants failed to prevent that conspiracy:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured  .  .  .  for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action  .  .  .   But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

42 U.S.C. § 1986.  *See, generally, Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir.1980) ("Section 1986 is designed to punish those who aid and abet violations of  § 1985.  We find no violation of § 1985. Accordingly, there can be no violation of  § 1986").

To maintain a cause of action under  § 1986 arising from a conspiracy under § 1985(3), a plaintiff must establish the following four elements:

> (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws

4

and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir.1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir.1994)).  The plaintiff further must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Johnson*, 40 F.3d at 839; *see also Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir.1996); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir.1992); *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir.1992).  Here, plaintiff has neither alleged nor established that he is a member of a "discrete and insular" minority accorded "special protection under the Equal Protection Clause because of inherent personal characteristics." *Seguin*, 968 F.2d at 590.  While plaintiff alleged that he is a paraplegic, a handicapped individual is not a member of a discrete and insular minority as contemplated under  § 1985(3).  *See Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir. 2000) (an alleged disabled plaintiff has no actionable claim for a discriminatory conspiracy for violation of § 1985(3) or a derivative claim of conspiracy under  § 1986, because  § 1985(3) "does not cover claims based on disability-based discrimination or animus;" such a conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus"), quoting *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 829 (1983); *Wilhem v. Continental Title Co.*, 720 F.2d 1173, 1174-78 (10th Cir. 1983) ("[w]e must conclude that a class of 'handicapped persons' was not in the contemplation of Congress in 1871, and was not included as a class in what is now § 1985(3)").  Plaintiff has failed to state a cause of action for a conspiracy under § 1985.  Absent a violation of § 1985, he may not maintain an action against defendants under § 1986.  *See Seguin*, 968 F.2d at 590; *Browder*, 630 F.2d at 1155 (6th Cir.1980).  Accordingly, plaintiff's claims under § 1986 should be dismissed.

### III.    Defendants' motions for a more definite statement (docket nos. 20 and 21) and plaintiff's motion to amend the complaint (docket no. 22).

Defendants CMS, Dr. Abdellatif, PA Spitters and Dr. Hutchinson filed their Rule 12(e) motion on December 9, 2010.  *See* docket no. 20.  These defendants contend that plaintiff's original complaint was deficient because it lacked no dates or times as to any of the events or actions alleged in the complaint, and did not identify the defendants responsible for "special damages" or "punitive damages."  Defendants further contend that this lack of dates and times would force them to guess as to the relevant time periods which they are called to defend, and would prejudice defendants in their efforts to properly set forth an answer to the complaint.   For these reasons, defendants CMS, PHS, Dr. Abdellatif, PA Spitters and Dr. Hutchinson have moved for a more definite statement pursuant to Fed. Rules Civ. Proc. 12(e), which provides that:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.  If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. Rules Civ. Proc. 12(e).

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).  By granting a motion under Fed. Rules Civ. Proc. 12(e), "the court may insist that the plaintiff 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (§ 1983 case involving alleged deprivation of access to the courts).  Nevertheless,

motions seeking a more definite statement are generally disfavored. *See Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959) ("[i]n view of the great liberality of F.R.Civ.P. 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss"); *Cooper Ins. Agency Center, L.L.C. v. Mourer-Foster, Inc.*, No. 5:05-cv-56, 2005 WL 3289345 at *1 (W.D. Mich. Dec. 5, 2005) (Bell, J.) ("Rule 12(e) motions are disfavored by most courts and are rarely granted in view of the notice pleading standards of Rule 8(a)(2)").

In an apparent response to defendants' motion for a more definite statement, plaintiff moved to amend his complaint and submitted a proposed amended complaint. *See* Motion to amend complaint (docket no. 22). Assuming that the "mailbox rule" applied to plaintiff, the court construes the motion to amend and proposed amended complaint as filed on January 5, 2011, the date plaintiff submitted it to the prison officials for mailing.[4]

Fed. Rules Civ. Proc. 15(a) governs the amendment of complaints, providing in pertinent part as follows:

> **(1) Amending as a Matter of Course**. A party may amend its pleading once as a matter of course within:

> **(A)** 21 days after serving it, or

---

[4] Plaintiff's motion to amend was docketed on January 10, 2011. However, under the federal *pro se* prisoner mailbox rule, the court considers the motion filed as of January 5, 2011, the date plaintiff states he mailed the motion. *See* docket nos. 22, 23 and 24. The court notes that plaintiff has complicated matters by erroneously dating some documents as January 5, *2010* rather than January 5, 2011. Nevertheless, under the "relaxed filing standard" of the prison mailbox rule, such documents are deemed filed when a *pro se* prisoner hands the documents over to prison officials for mailing to the court. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (*pro se* prisoner's complaint); *Scuba v. Brigano*, 527 F. 3d 479, 484 (6th Cir. 2007) (*pro se* prisoner's motion for an extension of time to file objections); *Lyons-Bey v. Pennell*, 93 Fed. Appx. 732 (6th Cir. 2004) (*pro se* prisoner's response to motion to dismiss civil complaint).

**(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

**(2) Other Amendments**.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Fed. Rules Civ. Proc. 15(a).

Assuming that plaintiff filed his motion to amend and proposed amended complaint on January 5, 2011, the filing of the amended complaint was too late for purposes of amending it "as a matter of course" under Fed. R. Civ. P. 15(a)(1)(B) as to defendants CMS, Dr. Abdellatif, PA Spitters and Dr. Hutchinson.[5]  However, the amended complaint would appear to be operative as to PHS (which did not file its motion for more definite statement until December 21, 2010).[6]  In their opposition to plaintiff's motion to amend, defendants PHS, CMS, Dr. Abdellatif, PA Spitters and Dr. Hutchinson contend that plaintiff's proposed amended complaint does not remedy the defects found in the original complaint.  *See* Responses (docket nos. 25 and 26).  The court disagrees.  The proposed amended complaint alleged that plaintiff has requested the foot rests, AFO leg braces and Canadian Crutches since October 21, 2007.  Amend. Compl. at ¶ 16.  Given this date, defendants

---

[5] These four defendants filed their Rule 12(e) motion on December 9, 2010.  Under Fed. R. Civ. P. 15(a)(1)(B), the 21 days for amending as a matter of course expired on December 30, 2010.  Because defendants served this motion by mail, plaintiff was entitled to receive an additional three days to act under Fed. R. Civ. P. 6(d), which provides that "[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C) [i.e., mailing it to the person's last known address], (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)").  After adding in the three days for plaintiff to respond under Fed. R. Civ. P. 6(d), the amended complaint was still late for purposes of Fed. R. Civ. P. 15(a)(1)(B), because it should have been filed by no later than Monday, January 3, 2011.

[6] In addition, under the court's reading of Fed. R. Civ. P. 15(a)(1)(B), plaintiff could not amend "as a matter of course" with respect to Director Caruso, Warden Berghuis and HUM Gracik, because these three defendants responded to the original complaint by filing a motion for summary judgment under Fed. R. Civ. P. 56.  Thus, plaintiff's attempt to amend was neither "21 days after service of a responsive pleading" nor "21 days after service of a motion under Rule 12(b), (e), or (f)."

are now on notice of the time of the alleged incidents (on and after October 21, 2007), the location of the incidents (LRF) and the substance of the claims (plaintiff's requests for foot rests, AFO braces and crutches).

In summary, plaintiff has amended his complaint "as a matter of course" as to one defendant and has moved to amend it as to the remaining defendants.  Under these circumstances, plaintiff's motion to amend should be granted as to those defendants who were not subject to the amendment "as a matter of course."  Justice requires the amendment in order to have a single complaint before the court.  *See* Fed. R. Civ. P. 7(a)(1) ("Only these pleadings are allowed:  .  .  .  (1) *a* complaint  .  .  .") (emphasis added).  Further, defendants are essentially receiving what they are seeking by their motions for a more definite statement, a statement of facts which reduces the vagueness or ambiguity of the original complaint.

Accordingly, plaintiff's motion to amend (docket no. 22) should be granted, defendants' motions for a more definite statement (docket nos. 20 and 21) should be denied as moot, and defendants CMS, PHS, Dr. Abdellatif, PA Spitters and Dr. Hutchinson should be directed to file an answer or appropriate motion in response to the amended complaint consistent with the court rules.

## IV.    Defendants' motion for summary judgment (docket no. 27)

### A.    Legal Standard

Director Caruso, Warden Berghuis and HUM Gracik have moved for summary judgment.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

10

## B.     Plaintiff's Eighth Amendment claims

Plaintiff's remaining claims seek relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984);  *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff claims that defendants have failed to provide him with medical care and treatment to prevent foot drop, specifically, to provide him with adequate foot rests, AFO leg braces and Canadian Crutches. It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976).   A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Hudson*, 503 U.S. at 8-9.  With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of

11

life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 1.    Director Caruso and Warden Berghuis

Plaintiff's claim against Director Caruso and Warden Berghuis are based upon a theory of respondeat superior. Specifically, plaintiff alleged that Director Caruso was responsible for all policies and procedures throughout the MDOC, and that Warden Berghuis was responsible for the custody, care and safety of all prisoners at LRF. Amend. Compl. at ¶¶ 3 and 6. While plaintiff makes the conclusory allegation that he requested the medical equipment "from each named [d]efendant," he has not demonstrated that Director Caruso or Warden Berghuis were directly involved in his medical care. *Id.* at ¶ 16. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Department of Social Services*, 436

12

U.S. 658, 691 (1978); *Taylor v. Michigan Department of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995).  A supervisor's liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act.  *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).  In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Viewing the evidence in the light most favorable to plaintiff, there is no evidence that Director Caruso or Warden Berghuis encouraged or directly participated in the incidents at issue in this lawsuit.  Accordingly, these two defendants are entitled to summary judgment.

> **2.      HUM Gracik**

Defendant Gracik  is the HUM at LRF and is responsible for the efficient and effective management of health services within the correctional facility's health care unit.  Gracik Aff. at ¶¶ 1-2 (docket no. 28-2).  In her affidavit, HUM Gracik stated that she is generally familiar with plaintiff's allegations that he requested wheelchair foot rests and leg braces.  *Id.* at ¶ 5.  In this regard, HUM Gracik stated that "[a]t no time during Stewart's incarceration at LRF were foot rest [sic] or leg braces specifically ordered by medical personnel."  *Id.* at ¶ 6.  Gracik pointed out that a Special Accommodation Notice (SAN) provides a prisoner with various assistive devices and other services necessary for medical needs, subject to restrictions necessary to maintain institutional order and security and that only a medical practitioner or qualified health professional is authorized to issue permanent SAN(S).  *Id.* at ¶ 7.  Gracik is authorized by MDOC policy to issue SANS.  *Id.* at ¶ 8.

13

Plaintiff had eight SANS issued by medical staff. *Id.* at ¶ 9. However, none of the SANS issued at LRF included foot rests or leg braces. *Id.* The only SAN in plaintiff's MDOC medical file which included foot rests was issued on March 23, 2007, while plaintiff was incarcerated at the Macomb Correctional Facility (MRF). *Id.* at ¶ 10. The next SAN issued at MRF on June 19, 2007, did not include foot rests. *Id.* Gracik further stated that there is no SAN in plaintiff's medical file that ordered leg braces. *Id.* On the contrary, the medical records indicate that plaintiff refused to allow the MDOC to provide him with the accommodations that he requested (and now seeks in this lawsuit), i.e., plaintiff either refused to have his wheelchair sent out to have foot rests installed or simply refused the foot rests. *Id.* at ¶ 11. HUM Gracik then provided a summary of plaintiff's extensive medical history on this issue.

### a.     Plaintiff's accommodations at MRF

On March 23, 2007, while at MRF, plaintiff requested foot rests for his wheelchair, claiming they had been confiscated at the jail. *Id.* at ¶ 12. After a discussion with medical staff, plaintiff agreed to give up his wheelchair for three days for installation of foot rests. *Id.* The record also reflected that the physician (Ann Y. Burton, M.D.) would "consider need for AFO braces." MRF medical records (3/23/07) (docket no. 30 at pp. 2-3). A SAN was issued that day to reflect that foot rests were ordered. Gracik Aff. at ¶ 13; SAN (3/23/07) (docket no. 30 at p. 4). This is the only SAN in plaintiff's medical file that included foot rests. Gracik Aff. at ¶ 13.

On April 17, 2007, plaintiff's wheelchair was returned, with a notation that the vendor was unable to put on a clothing guard or foot rests. MRF progress note (4/17/07) (docket no. 30 at p. 6). Plaintiff declined a new wheelchair, "stating his wheelchair is custom." *Id.* MRF personnel were to consult with a vendor and attempt to purchase clothing guard and foot rests. *Id.*

14

On April 23, 2007, a wheelchair repair specialist notified MRF that plaintiff's wheelchair was not repairable and offered to replace the wheelchair with a new one.  Gracik Aff. at ¶ 14.  When advised of this situation, plaintiff became angry, threatened a lawsuit, and refused to use the new wheelchair he was using as a loaner.  *Id.* at ¶ 14; MRF progress note (4/23/07) (docket no. 30 at p. 5).

On June 19, 2007, while plaintiff was still at MRF, his SAN was updated to remove foot rests.  Gracik Aff. at ¶ 15; SAN (6/19/07) (docket no. 30 at p. 7).

**b.**     **Plaintiff's accommodations at LRF**

Plaintiff was transferred to LRF on June 29, 2007.  Gracik Aff. at ¶ 16.  Upon his arrival at LRF, plaintiff had a SAN for the use of a wheelchair and other accommodations, but was not issued a SAN for foot rests or leg braces.  *Id.*  The medical transfer from MRF did not include foot rests, an AFO brace or crutches.  MRF medical transfer (6/28/07) (docket no. 30 at p. 9).

Plaintiff was evaluated by Dr. Abdellatif at LRF's disability clinic on August 1, 2007. Gracik Aff. at ¶ 17.  While plaintiff requested to purchase his own tires for the wheelchair, there was no mention of an AFO brace or foot rests.  *Id.*; LRF patient report and examination (8/1/07) (docket no. 30 at pp. 11-13).  At that time, Dr. Abdellatif ordered: crutches; "dressing/catheter/colostomy supplies;" and a cushion.  LRF patient report and examination (8/1/07) (docket no. 30 at p. 13).

Plaintiff received a new wheelchair cushion on August 17, 2007 per doctor's orders. Gracik Aff. at ¶ 18; LRF progress note (8/17/07) (docket no. 30 at p. 14).

On October 18, 2007, plaintiff notified health care that his wheelchair had been sent out over a month ago to get a flat tire fixed, complained about the loaner wheelchair he was issued, and indicated that he needed his own chair back immediately.  Gracik Aff. at ¶ 19; LRF request for

service (10/18/07) (docket no. 30 at p. 15).   The matter was referred to a nursing supervisor for review.  LRF request for service (10/18/07) (docket no. 30 at p. 15).

Plaintiff alleged that his cause of action commenced on October 21, 2007. There is no particular medical record which reflects that plaintiff was denied treatment on that date.

On October 24, 2007, a health care request was received from plaintiff asking for therapy and to be fitted with braces.  Gracik Aff. at ¶ 20; LRF request for services (10/24/07) (docket no. 30 at p. 16).   Health care advised plaintiff that his chart would be reviewed by the appropriate person.  Gracik Aff. at ¶ 20.

On October 25, 2007, health care received a request from plaintiff asking for therapy. *Id.* at ¶ 21; LRF request for services (10/25/07) (docket no. 30 at p. 17).  Plaintiff was advised that he should discuss this with the provider at his next chronic care visit.  *Id.*

On November 13, 2007, plaintiff's SAN authorizing an attendant to assist with meal access and other movement inside the institution was cancelled at his request.  Gracik Aff. at ¶ 22; LRF special accommodation order (11/13/07) (docket no. 30 at p. 18).

On January 10, 2008, the repaired wheelchair was returned to plaintiff and his temporary chair returned.  Gracik Aff. at ¶ 23; LRF progress note (1/10/08) (docket no. 30 at p. 19). Plaintiff later returned it because the front wheels were the wrong size.  Gracik Aff. at ¶ 23.  The wheelchair was sent out for repair again.  *Id.*

On January 24, 2008, plaintiff refused to accept the repaired wheelchair because the wheels were too small and shook excessively.  *Id.* at ¶ 24.  Medical records reflected that while the wheelchair's front wheel shook back and forth when he wheeled down the sidewalk "rather fast," but that the wheels did not shake at "slower speeds."  LRF progress note (1/24/08) (docket no. 30

16

at p. 20). Plaintiff refused to take possession of the repaired wheelchair and returned to his unit in the temporary wheelchair. *Id.* Plaintiff's wheelchair was sent out for repairs again. Gracik Aff. at ¶ 24.

Plaintiff picked up his repaired wheelchair on February 7, 2008 and returned the loaner. *Id.* at ¶ 25; LRF progress note (2/7/08) (docket no. 30 at p. 21). LRF medical records reflect that plaintiff "seems happy with wheelchair repair." LRF progress notes (2/7/08).

On April 2, 2008, health care received a request from plaintiff that the wheelchair needed to be repaired. Gracik Aff. at ¶ 26; LRF request for services (4/2/08) (docket no. 30 at p. 22).

On April 21, 2008, health care received a request from plaintiff with two problems. First, plaintiff had complaints about his shoulder. LRF request for services (4/21/08) (docket no. 30 at p. 23). Second, plaintiff had complaints about his wheelchair. Plaintiff had talked to a doctor about foot drop. Plaintiff believed he needed to be fitted with braces but nothing had been done about the braces, and he had not received a foot rest. Gracik Aff. at ¶ 27; LRF request for services (4/21/08). Plaintiff was advised that he was on the schedule to see the medical provider. *Id.*

Plaintiff was scheduled to meet with a medical provider the next week, but missed his April 28, 2008 appointment with the provider (PA Spitters). Gracik Aff. at ¶ 28; LRF "no show summary" (4/28/08) (docket no. 30 at p. 24).

PA Spitters evaluated plaintiff two days later on April 30, 2008. Gracik Aff. at ¶ 29; LRF chronic care clinic notes (4/30/08) (docket no. 30 at pp. 25-29). The record reflects that plaintiff talked to PA Spitters about the AFO braces and that he previously had foot rests on his wheelchair. *Id.* PA Spitters noted that plaintiff was able to lift his legs bilaterally but had "no foot

dorsiflexion ability." *Id.*  PA Spitters issued special accommodation orders for a new air mattress and for an attendant to assist plaintiff with meal access and other movement inside the facility.  *Id.* PA Spitters also issued a request to "check on addition of foot rests and armrests to pt wheelchair." *Id.*  A SAN issued after the appointment for a new air mattress and an attendant.  SAN (4/30/08) (docket no. 30 at p. 30).

On May 23, 2008, health care received a request from plaintiff asking about the brace.  Gracik Aff. at ¶ 31; LRF request for services (5/23/08) (docket no. 30 at p. 31). Health care responded that if the doctor or PA felt a brace was needed, "they would have ordered one."  *Id.*

A SAN was issued after an appointment on June 6, 2008, which did not include any new accommodations.  Gracik Aff. at ¶ 32; SAN (6/6/08) (docket no. 30 at p. 32).  HUM Gracik noted that foot rests and braces were not ordered as part of this SAN.  Gracik Aff. at ¶ 32.

Approximately four months later, on September 1, 2008, plaintiff asked a nurse about a plastic leg brace to keep his right foot from turning in, stating that he had used braces before his incarceration.  Gracik Aff. at ¶ 33; LRF progress note (9/1/08) (docket no. 30 at p. 33). Plaintiff was given release forms to have his outside medical records sent to the facility and encouraged to perform range of motion exercises "to prevent [his] foot from turning in."  *Id.*  Plaintiff agreed with the proposed plan and expressed no other concerns at that time.  LRF progress note (9/1/08).

On September 11, 2008, health care received a request from plaintiff for leg braces for his right foot drop and a foot rest for his wheelchair.  Gracik Aff. at ¶ 34; LRF request for services (9/11/08) (docket no. 30 at p. 34).  Healthcare advised plaintiff that he should discuss this with the provider at his upcoming appointment.  *Id.*

At the appointment on October 3, 2008, PA Spitters evaluated plaintiff.  Gracik Aff. at ¶ 35; LRF chronic care clinic (10/3/08) (docket no. 30 at pp. 35-38).  At that time, plaintiff informed PA Spitters: that he wanted AFO braces for his feet "because he sees other people in the unit get prosthetics and he feels entitled to this;" that he spoke with the physician last year and did not get the AFO braces he wanted; that he has been asking for footrests on his wheelchair but that "they keep it too long when he has repairs" and "doesn't feel the repairs are adequate."  *Id.*  The medical record include a notation regarding plaintiff's "Accommodative devices" as follows:

> Presence of accommodative devices; wheelchair

> [W]heelchair is without foot rests pt has on WC and came into MDOC with no foot rests per pt this is being addressed but he is reticent to give up his chair to have changes made

> Pt is obs to on his own lift both legs he is obs dorsiflexing feet.  He appears quite content to be in w/c if he was to be up and about doing walking AFO might be of help but as he is foot rests will keep feet in proper flexion.  Pt claims his rt foot is [inverting] though no signif inversion is noted this date

LRF chronic care clinic (10/3/08).

Approximately five months later, on February 27, 2009, healthcare received a request from plaintiff indicating that he could not wear the state issued shoes because his foot has dropped, he was refused braces and is getting blisters on his feet.  Gracik Aff. at ¶ 36; LRF request for services (2/27/09) (docket no. 30 at p. 39).  Plaintiff was advised to see the quartermaster for properly fitted shoes and that he could address shoes and braces at his upcoming chronic care appointment.  *Id.*

On April 1, 2009, PA Spitters evaluated plaintiff at the chronic care clinic.  Gracik Aff. at ¶ 37; LRF chronic care clinic (4/1/09) (docket no. 30 at pp. 40-44).  Plaintiff requested a SAN for "new balance tennis shoes" and stated that he should have AFO braces for his feet. *Id.*  At

that time, it was noted that the medical provider had previously discussed arm rests and foot rests which would give plaintiff added support, and plaintiff was offered these for his wheelchair. *Id*. Plaintiff again expressed concern that he did not want to give up his wheelchair while it is getting repairs or updates, and wanted to avoid using a loaner wheelchair, noting that his lawyer had an appearance for an earlier release date. *Id*. PA Spitters noted: that plaintiff would benefit from foot rests if he "will agree to same;" that plaintiff raised both legs with no transfer problems; and that "[t]ennis shoes would be nice but medical necessity of one vs other unknown." LRF chronic care clinic (4/1/09) (docket no. 30 at p. 42). A special nursing instruction stated, "pt wheelchair needs addition of footrests if t agrees to same." *Id.* (docket no. 30 at p. 43).

On April 3 2009, nursing staff saw plaintiff regarding foot rests for his wheelchair which he **again** declined to have added. Gracik Aff. at ¶ 38; LRF progress note (4/3/09) (docket no. 30 at p. 45). Plaintiff stated that the front wheels of his chair were wobbling and he wanted smaller wheels. *Id*. Plaintiff was advised that he would be called out when the wheelchair was needed for repair. *Id.*

On May 8, 2009, plaintiff was scheduled to discuss wheelchair foot rests with medical staff. Gracik Aff. at ¶ 39; LRF progress note (5/8/09) (docket no. 30 at p. 46). Plaintiff was advised the AFO braces would not be provided, but foot rests for his wheelchair would be provided. *Id*. At that time: plaintiff became upset; threatened lawsuits against medical staff; declared the doctor incompetent; and stated that the medical staff was untrustworthy. *Id*. Plaintiff would only agree to have the foot rests installed if his wheelchair did not have to be taken off site. *Id*. However, the company that repairs wheelchairs advised LRF staff that they could not install foot rests on the wheelchair without taking it off site. Gracik Aff. at ¶ 39.

20

On September 15, 2009, plaintiff was given a temporary replacement wheelchair while his chair was sent for repairs. Gracik Aff. at ¶ 40; LRF progress note (9/17/09) (docket no. 30 at p. 47). The replacement wheelchair had two foot rests that were adjusted to their maximum depth. *Id*.

A SAN issued by P.A Spitters on October 1, 2009, lists 13 separate accommodations. Housing accommodations consist of: barrier free/wheelchair accessible (6/19/2007); ground floor room (6/19/2007); shower chair (6/19/2007); bottom bunk (6/19/2007); and air mattress (4/30/2008). Medical Equipment accommodations consist of: crutches (8/1/2007); dressing/catheter/colostomy supplies (8/1/2007); wheelchair (permanent) (6/19/2007); urinal (8/24/2007); and urinal/NDG shoes (4/1/2009). Other accommodations consist of: handicap table (6/19/2007); transport vehicle with lift (6/19/2007); and gloves 30 per month (10/19/2007). *See* SAN (April 1, 2009) (docket no. 38-1 at p. 3).[7]

On October 19, 2009, PA Spitters evaluated plaintiff at the LRF chronic care clinic, at which time plaintiff advised Spitters that the chair was out for repairs to get foot rests. Gracik Aff. at ¶ 41; LRF chronic care clinic (10/19/09) (docket no. 30 at pp. 48-51).

On October 31, 2009, health care received a call from the unit that plaintiff's wheelchair needed repairs to a tire. Gracik Aff. at ¶ 42; LRF progress note (10/31/09) (docket no. 30 at p. 52). It was reported that "someon[e]" was trying to get a wheel on. *Id*. Plaintiff was advised to come to health care to swap his chair for another one, but he did not come. *Id*.

---

[7] The court notes that defendants did not provide the court with a copy of this SAN in support of their motion for summary judgment. Rather, plaintiff presented this SAN in his affidavit in opposition to defendants' motion.

21

c.      **Plaintiff's accommodation at LCF**

On December 30, 2009, plaintiff was transferred from LRF to the Lakeland Correctional Facility (LCF).  Gracik Aff.  at ¶ 43.  On January 4, 2010, the nursing supervisor at LRF contacted LCF to let them know that plaintiff's wheelchair was out for repairs.  Gracik Aff. at ¶ 44; LRF progress note (1/4/10) (docket no. 30 at p. 53).

On January 13, 2010, a SAN was issued at LCF.  Gracik Aff. at ¶ 45; SAN (1/13/10) (docket no. 30 at p. 54).  The SAN included addition "other" medical equipment (i.e., "tennis shoes"), but did not include either foot rests or AFO braces.  *Id*.

d.      **Plaintiff's counter-affidavit**

Plaintiff filed an affidavit in opposition to the motion, stating that prior to his incarceration, physicians had prescribed him AFO braces, Canadian Crutches and "adequate wheelchair foot rests."  Stewart Aff. at ¶ 1 (docket no. 38). Plaintiff, however, has not provided any copies of these medical records generated before his incarceration.  Nevertheless, plaintiff points out that on August 1, 2007, while he was incarcerated at LRF, Dr. Abdellatif ordered crutches, that this order appeared on a SANS issued after that date, and that crutches were not provided.  *Id.* at ¶¶ 9, 16.

e.      **Plaintiff's claims regarding wheelchair foot rests**

The record reflects that plaintiff has taken inconsistent positions regarding his desire to have wheelchair foot rests.  While plaintiff demanded the installation of foot rests at various times, he also resisted health care personnel's efforts to install them and refused a new wheelchair with foot rests.  The record reflects that plaintiff received on-going treatment for his condition as a paraplegic, which included numerous appointments with health care providers, numerous

22

accommodations as set forth in the SANS and numerous adjustments to his wheelchair. Health care personnel monitored plaintiff's condition, responded to his health care requests, and repaired or attempted to repair his wheelchair. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). This action falls in the latter category. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*

In addition, a prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim under the Eighth Amendment. *See Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (prisoner failed to state and Eighth Amendment claim of deliberate indifference where his complaints against the doctor "represent nothing more than mere disagreement with the course of his medical treatment"). "A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim." *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003). *See also*, *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Chance v. Armstrong*, 143 F.3d 698, 703 (2nd Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is

23

adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation").

Furthermore, plaintiff cannot maintain a federal constitutional claim against defendants for deliberate indifference to a serious medical need when he refused treatment (in this case, a new wheelchair that could be fitted with foot rests).  Prison officials are not deliberately indifferent to a prisoner's serious medical needs when the prisoner refuses to accept medical treatment. *See, e.g., Richard v. Bokor*, 379 Fed. Appx. 719, 720-22 (10th Cir. 2010) (prisoner failed to state a claim for deliberate indifference where he thwarted medical personnel's efforts by disrupting the medical visits and refusing the offered treatment); *Day v. Lantz*, 360 Fed. Appx. 237, 238-39 (2nd Cir. 2010) (prison employees were not deliberately indifferent to plaintiff prisoner's serious medical needs when they diagnosed and treated the prisoner's inguinal hernia, but the prisoner refused to undergo surgery to repair it); *Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2006) (affirming judgment in favor of medical personnel on inmate's claim of deliberate indifference, where the inmate was the sole cause of delay in treatment). *Cf. Ratcliff v. Moore*, 614 F. Supp. 2d 880, 889-90 (S.D. Ohio 2009) (prison officials did not engage in cruel and unusual punishment where the prisoner plaintiff engaged in a religiously motivated hunger strike, when prison medical staff indicated that he needed additional medical evaluation but the prisoner indicated that he would refuse medical treatment ).

For these reasons, HUM Gracik's motion for summary judgment should be granted with respect to plaintiff's claim regarding the foot rests.

### f.    Plaintiff's claims regarding AFO braces

Plaintiff's desire for AFO braces does not form the basis for an Eighth Amendment claim.  Plaintiff has not identified any act taken by HUM Gracik to deny him the braces, which were not included in any SANS or prescribed by any medical provider.  The record reflects that plaintiff received extensive treatment for his medical condition.  This court should not second guess the medical judgments of the prison medical providers with respect to plaintiff's need for AFO braces nor should the court "constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n. 5.  While plaintiff desired to have AFO leg braces, his disagreement with medical personnel with respect to his medical care cannot form the basis for an Eighth Amendment claim. *See Woodberry*, 146 Fed. Appx. at 977; *Owens*, 79 Fed. Appx. at 161; *Chance*, 143 F.3d at 703; *Smith*, 910 F.2d at 502.  Accordingly, HUM Gracik is entitled to summary judgment on this claim.

### g.    Plaintiff's claims regarding crutches

However, the court concludes that a genuine issue of material fact exists with respect to plaintiff's Eighth Amendment claim that defendants failed to provide him with crutches.  It is undisputed: that a medical provider ordered the crutches on August 1, 2007; that this order was included in SANS issued after that date; and, plaintiff did not receive the crutches while incarcerated at LRF.  Defendant Gracik, as the HUM at LRF, was admittedly responsible for "the coordination of all clinical activities, dental, medical, psychological services, mental health and all ancillary and support services" at the correctional facility's Health Care Unit.  Gracik Aff. at ¶¶ 1-2.  Given her position, genuine issues of material fact exist with respect to whether HUM Gracik's responsibility included providing plaintiff with crutches as ordered on August 1, 2007, and why the crutches were

not provided as required by a doctor's order.  Accordingly, HUM Gracik's motion for summary judgment should be denied as it pertains to plaintiff's claim regarding the failure to provide crutches.

## V.    Immunity Issues

Defendants Director Caruso, Warden Berghuis and HUM Gracik have raised issues of Eleventh Amendment immunity and qualified immunity.

### A.    Eleventh Amendment

The Eleventh Amendment, which "bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities," *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003), is not relevant to this action because plaintiff does not seek monetary damages against these defendants in their official capacities.  Plaintiff's claims in both the complaint and amended complaint are asserted against Director Caruso, Warden Berghuis and HUM Gracik in their "personal" capacities.  Compl. at ¶¶ 2, 3 and 6; Amend. Compl. at ¶¶ 2, 3 and 6.  Although plaintiff used the term "personal capacity" rather than "individual capacity,"  the court concludes that defendants were on notice that they were being sued as individuals and not in their official capacities.   Accordingly, defendants' Eleventh Amendment claims should be denied.

### B.    Qualified immunity

Defendants do not address the issue of qualified immunity in any detail, merely citing the legal standard for qualified immunity and concluding, without reference to the applicable law or facts at issue in this case, that "Stewart's constitutional rights were not violated and Defendants acted reasonably at all times."  Defendants' Brief at pp. 14-15 (docket no. 28).  It is insufficient for defendants to cite law for the general proposition that qualified immunity exists and then conclusorily assert that they are entitled to it. *Malec v. Sanford*, 191 F.R.D. 581, 588 (N.D.Ill.2000).  "[I]ssues

26

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). *See Little v. Cox's Supermarkets*,  71 F.3d 637, 641 (7th Cir. 1995) (a court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments).   Accordingly, defendants have failed to  adequately raise the issue of qualified immunity.

### VI.     Recommendation

For the reasons set forth above,

I respectfully recommend that plaintiff's motion to amend complaint (docket no. 22) be **GRANTED**;

I further recommend that defendants' motions for a more definite statement (docket nos. 20 and 21) be **DENIED** as moot**;**

I further recommend that defendants' motion for summary judgment (docket no. 27) be **GRANTED** as to all claims asserted against Director Caruso and Warden Berghuis and that these two defendants be **DISMISSED** from this action; and,

I further recommend that defendants' motion for summary judgment (docket no. 27) be **GRANTED** as to all claims asserted against HUM Gracik, **EXCEPT** as to plaintiff's claim that he was denied crutches ordered on August 1, 2007.

Dated:  August 26, 2011                         /s/ Hugh W. Brenneman, Jr.
                                                HUGH W. BRENNEMAN, JR.
                                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).